IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEON G. CHAMBERLAIN,                     07-CV-1273-BR

       Plaintiff,                     OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


RICHARD A. SLY
1001 S.W. 5th Avenue, Suite 310
Portland, Oregon  97204
(503) 226-1227

LINDA S. ZISKIN
3 Monroe Parkway, Suite P
Lake Oswego, Oregon  97035
(503) 889-0472

      Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**BRITTANIA I. HOBBS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**FRANCO L. BECIA**
Assistant Regional Counsel
Office of the Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Leon Chamberlain seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which he denied Plaintiff's protective

application for Disability Insurance Benefits (DIB).  This Court

has jurisdiction to review the Commissioner's decision pursuant

to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court

**REVERSES** the decision of the Commissioner and **REMANDS** this matter

pursuant to sentence four of 42 U.S.C. § 405(g) for further

administrative proceedings consistent with this Opinion and

Order.


2   -  OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed his application for DIB on May 14, 2003. Tr. 59.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on June 7, 2006.  Tr. 44.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.

The ALJ issued a decision on July 3, 2006, in which he found Plaintiff was not entitled to benefits.  Tr. 12-19.  That decision became the final decision of the Commissioner on June 23, 2007, when the Appeals Council denied Plaintiff's request for review.  Tr. 5-7.

## BACKGROUND

Plaintiff was 62 years old at the time of the hearing. Tr. 59.  He has a college education and is a Vietnam veteran. Tr. 162, 777.  Plaintiff alleges disability as a result of the following conditions:  PTSD, foot pain, carpal tunnel syndrome (CTS), and torn bicep.

**I.  Plaintiff's Testimony.**

At the hearing, Plaintiff testified his most recent work was as a self-employed internet auctioneer.  Tr. 777, 790.  In a

---

[1] Citations to the official transcript of record filed by the Commissioner on January 24, 2008, are referred to as "Tr."

June 9, 2003, work-activity report for self-employed persons, Plaintiff stated he purchased items from yard sales, prepared them for listing on the Internet, completed the Internet listing, provided invoices when items are sold, and packaged and shipped the items. Tr. 237. He stated he had worked more than 40 hours a week without assistance since April 1999 until he ceased doing auction sales. Tr. 238. Among other things, the auction sale work required driving, which Plaintiff found difficult because of CTS and a torn bicep. Tr. 791. He also stated keyboarding resulted in pain, numbness, and stiffness in his right hand Tr. 793. He testified his symptoms improved after he closed his Internet auction business. Tr. 792.

Before working in Internet auction sales, Plaintiff worked in a computer disk factory and a steel-plating shop. Tr. 778, 780. He also worked as a trainee assistant to a case manager performing file-clerk duties for an agency that determined eligibility for medical care. Tr. 782.

Plaintiff testified his CTS and torn bicep cause him difficulty when he brushes his teeth, washes his hair, and grips items such as a coffee cup. Tr. 791. He stated he is able to wash dishes and to do his laundry, but he must mow his lawn in two sections. Tr. 795. He reported he has foot problems and uses orthotics to relieve the pain. Tr. 796. The orthotics are effective unless he is on concrete for longer than two hours or

4  -  OPINION AND ORDER

has to stand all day.  Tr. 797.  He also stated he walks 3-4 miles with his dog every day.  Tr. 799.

Plaintiff testified he does not like crowds, he suffers from post-traumatic stress disorder (PTSD) that causes him to want his back against a wall when he is in public spaces, and he shops late at night to avoid people.  Tr 785-95.  He testified he has had problems in work settings with his coworkers startling him by tapping him on the shoulder or dropping items nearby.  Tr. 785. He once elbowed and kicked someone in an automatic response to being startled.  Tr. 785.  He stated he gets along with his coworkers, but not with his supervisors.  Tr. 796.  He reported he has a "problem with authority."  Tr. 796.  Plaintiff stated he gets Vietnam flashbacks and nightmares that interfere with his sleep.  Tr. 786.  To sleep soundly, he uses beer, marijuana, or medications.  Tr. 786.

On April 1, 2003, Plaintiff completed a Disability Report in which he stated his PTSD affects his ability to communicate and to socialize.  Tr. 156.  He reported his physical impairments severely limit the use of his hands and feet, he can drive only 15 minutes before his arm goes numb, and he can only type 20 minutes on a computer.  Tr. 156, 163.  He stated he stopped working because he was unable to cope with his symptoms.

On January 9, 2002, Plaintiff completed a Statement in Support of Claim in which he reported he prefers to sit with his

5  -  OPINION AND ORDER

back against a wall and has difficulty with loud noises such as
fireworks, which cause him to react automatically to defend
himself.  Tr. 165.  He stated those reactions have not improved
over time.  Tr. 165.  Plaintiff also reported that being under
someone's direct supervision increases his "sense of panic."
Tr. 165.

On July 7, 2003, and April 6, 2004, Plaintiff completed
Daily Activities Questionnaires in which he stated he cannot keep
his house clean, does his laundry weekly, washes his dishes every
three days, and mops his floors once weekly.  Tr. 183, 205.  He
also stated he lives alone and no longer cooks as much as he once
did.  Tr. 182-83, 206.  Plaintiff also reported he experiences
pain in his hands after driving for 20 minutes, experiences pain
in his feet after standing for two hours, and his sleep is
disturbed by PTSD and numb hands.  Tr. 188.  Plaintiff also
stated he used to belong to the Moose Club; take photographs and
write; and attend movies, concerts, and dances.  Tr. 186, 207.
He testified he shops once or twice per week late at night, but
he noted that was not a change in his usual habits.  Tr. 184,
206.  He also reported he is socially isolated and dependent on
his medications.  Tr. 188.

On July 7, 2003, and April 6, 2004, Plaintiff also completed
Pain Questionnaires in which he described daily aching and
burning pain in his left shoulder, both hands, and both feet

6   -   OPINION AND ORDER

lasting one-to-two hours.  Tr. 189, 214.  He stated the pain is caused by typing, sleeping, reaching, lifting, driving, and walking.  Tr. 189.  Although his pain is worsened by prolonging those activities, he stated the pain is improved by resting and taking aspirin.  Tr. 189, 214-15.  Plaintiff also reported he cannot be active for more than one or two hours without needing to rest, and he cannot finish tasks like typing or taking long drives.  Tr. 190, 215.  In addition, he stated he takes occasional walks and can walk between a half mile and two miles without resting.  Tr. 190-91, 215.

**II. Medical Evidence.**

    **A.    Veterans Administration (VA) Medical Staff.**

On August 4, 1999, treating physician William Mitchell, M.D., diagnosed Plaintiff with CTS.  Tr. 505.

On October 12, 1999, William Mitchell, M.D., Plaintiff's treating primary-care physician at the time, noted an increase in Plaintiff's PTSD symptoms after Plaintiff visited the touring Vietnam War Memorial exhibit.  Tr. 504.  Dr. Mitchell observed Plaintiff was "frantic," but Dr. Mitchell preferred to treat the PTSD through counseling rather than place him in the psychiatric ward.  Tr. 504.

On June 29, 2000, examining VA psychiatrist Calvin Michael, M.D., conducted an examination of Plaintiff and diagnosed him with depression and chronic, moderately severe PTSD.  Tr. 447.

7  -  OPINION AND ORDER

Dr. Michael assessed Plaintiff with a GAF[2] score of 40 and opined Plaintiff was unemployable.  Tr. 447.

On June 29, 2000, treating physician Luul Ghebrednghil, M.D., also diagnosed Plaintiff with flat feet and poor arches. Tr. 444.

On August 28, 2002, Psychiatric Nurse Practitioner (NP) Karen Inaba diagnosed Plaintiff with chronic and severe PTSD, major depressive disorder, and episodic alcohol abuse.  Tr. 404-07.  She assessed Plaintiff with a GAF score of 55.  Tr. 407.  In addition, NP Inaba referred Plaintiff to classes to assist in coping with PTSD, which he attended at least six times.  Tr. 400-03.

On December 4, 2002, VA psychologist Gary Monkarsh, Ph.D., conducted an examination of Plaintiff in conjunction with a VA disability-rating review.  Tr. 398-99.  Dr. Monkarsh observed below-average eye contact and labile affect in Plaintiff. Tr. 399.  He also opined Plaintiff suffered from chronic, severe

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100.  A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, few friends, unable to keep a job).  A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

8   -   OPINION AND ORDER

PTSD as well as dysthymic disorder and substance-abuse disorder secondary to PTSD.  Tr. 399.  Dr. Monkarsh assigned Plaintiff a GAF score of 45.  Tr. 399.

On January 14, 2003, the VA increased Plaintiff's percentage of disability from PTSD from 30% to 50%.  Tr. 319.  The decision was based on an assessed GAF score of 45 and Plaintiff's symptoms.  Tr. 320.

On August 11, 2003, Plaintiff reported heel pain to RN Robin Williams.  Tr. 389.  On September 3, 2003, Plaintiff again reported heel pain to RN Valerie Huggins-Martin.  Tr. 385.

On December 19, 2003, Plaintiff reported low mood to treating physician Tim Dicarlo, M.D.  Dr. Dicarlo prescribed antidepressants.  Tr. 383.  On December 19, 2003, Dr. Dicarlo also noted Plaintiff was experiencing increasing bilateral arm pain with numbness in the first three digits.  Tr. 383. Dr. Dicarlo prescribed wrist splints.  Tr. 383.

On January 12, 2004, Plaintiff reported to Registered Nurse (RN) Suzanne Stiles that the antidepressant was working well. Tr. 379.

On August 26, 2004, Dr. Dicarlo noted an increase in Plaintiff's PTSD symptoms and prescribed Prozac to Plaintiff. Tr. 373.

On March 1, 2005, Plaintiff reported to RN Mary Broillet that his right arm pain had increased to such an extent that he

9  -  OPINION AND ORDER

could not open a jar or wash his hair.  Tr. 360.

On March 17, 2005, the VA increased Plaintiff's percentage of disability from PTSD from 50% to 70%.  Tr. 245.  The decision again was based on a GAF score of 45 and Plaintiff's symptoms. Tr. 245.

On April 25, 2005, Plaintiff reported some improvement in his CTS to Dr. Dicarlo.  Tr. 356.

**B.    Dr. Jensen.**

On December 3, 2003, reviewing physician Linda Jensen, M.D., completed a residual functional capacity (RFC) report for Plaintiff at the request of Disability Determination Services (DDS).[3]  Tr. 255-59.  Dr. Jensen opined Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk for about 6 hours in an eight-hour workday; could push or pull; and had no limitations in posture or manipulation.

**C.    Dr. Henry.**

On November 25, 2000, reviewing physician Robert Henry, Ph.D., completed a Psychiatric Review Technique Form (PRT) at the request of DDS.  Tr. 261-74.  Dr. Henry concluded Plaintiff suffered from substance-abuse mood disorder, PTSD, and substance-addiction disorder, but he found those disorders were not severe.

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

Tr. 216, 264, 266, 269.  Dr. Henry also opined Plaintiff did not
have any severe affective or anxiety-related disorders.  Tr. 261.
Dr. Henry stated Plaintiff did not have any restriction in daily
living activities; difficulty maintaining concentration,
persistence, or pace; or episodes of decompensation.  Tr. 271.
He noted Plaintiff had mild difficulties in maintaining social
functioning and assigned Plaintiff a GAF score of 50.  Tr. 271.
On December 24, 2003, James R. Buskirk, M.D., reviewed and
concurred with Dr. Henry's PRT.  Tr. 277.

    **D.   Dr. Rethinger.**

On May 25, 2004, reviewing physician Paul Rethinger, Ph.D.,
completed an RFC for Plaintiff at the request of DDS.  Tr. 280-
86.  Dr. Rethinger was not provided with the treating physician's
medical records.  Dr. Rethinger, nevertheless, opined Plaintiff
could lift or carry 20 pounds occasionally and 10 pounds
frequently; could sit, stand, or walk for six hours in an eight-
hour workday; could perform unlimited pushing or pulling; and did
not have any limitations in posture or manipulation.  Tr. 280-86.
Dr. Rethinger found Plaintiff's symptoms were attributable to
medically determinable impairments, but he concluded Plaintiff's
reports regarding the severity of his symptoms were
disproportionate to his impairments.  Tr. 286.

On May 25, 2004, Dr. Rethinger also completed a PRT for
Plaintiff at the request of DDS.  Tr. 288-301.  Dr. Rethinger

opined Plaintiff suffered from substance-abuse-induced affective disorder, PTSD, and substance-addiction disorder, but he found those impairments were not severe. Tr. 290, 291, 293, 296. In addition, he opined Plaintiff's affective and anxiety-related disorders were not severe impairments. Tr. 290. Dr. Rethinger found Plaintiff did not have any restrictions in daily living; difficulties in maintaining concentration, persistence, or pace; or episodes of decompensation. Tr. 298. He found Plaintiff had only mild difficulties in maintaining social functioning. Tr. 298.

   **E.  Dr. Sacks.**

   On October 15, 2003, Gary Sacks, Ph.D., conducted a psychodiagnostic examination of Plaintiff at the request of DDS. Tr. 303-07. DDS requested Dr. Sacks to focus on PTSD, depression, polysubstance abuse, and CTS. Tr. 303. Dr. Sacks's examination was brief and tailored to meet that request. Tr. 303. In addition to his examination of Plaintiff, Dr. Sacks was able to review some of Plaintiff's VA records. Tr. 303.

   Plaintiff told Dr. Sacks that he worked doing Internet auctions and that he performed this work for 50 hours each week. Tr. 304-05. He told Dr. Sacks that he had sold all of his personal belongings in this manner. Tr. 304-05. When Dr. Sacks asked Plaintiff to name a pleasurable event, he was unable to do so. Tr. 305. Plaintiff reported he attended PTSD group therapy

through 2002.  Tr. 305.  He also stated he experienced feelings
of hopelessness and worthlessness and that he had attempted to
commit suicide twice (six and ten years before the date of this
examination).  Tr. 305.  Plaintiff reported poor sleep, night-
mares, and vivid daytime recollections of Vietnam triggered by,
among other things, combat television footage, cars backfiring,
and helicopters.  Tr. 305-06.  Dr. Sacks noted Plaintiff was
hypervigilant with an exaggerated startle response and was
frequently tearful.  Tr. 305.  Dr. Sacks diagnosed chronic and
moderate PTSD and polysubstance-dependence disorder causing mood
disorder.  He assessed Plaintiff with a GAF score of 50.

     **F.  Dr. Ogisu.**

     On October 20, 2003, Tatsuro Ogisu, M.D., conducted a
comprehensive orthopedic examination of Plaintiff at the request
of DDS.  Tr. 308-11.  Dr. Ogisu noted Plaintiff had been treated
for flat feet and had symptoms of aching feet, especially at the
heels.  Plaintiff was prescribed orthotics in 1997.  Tr. 308.
Dr. Ogisu found Plaintiff's gait was steady and his heel walking
was steady, but he noted walking caused Plaintiff to experience
heel pain.  Tr. 310.  Dr. Ogisu also noted Plaintiff's tandem
walking was straight and steady, and that his unipedal stance
could not be maintained without difficulty for longer than ten
seconds.  Dr. Ogisu reported Plaintiff could perform a deep knee
bend, and he had a full range of motion in his ankles, knees, and

13  -  OPINION AND ORDER

hips.  Tr. 310.  Dr. Ogisu inspected Plaintiff's feet and noted there was not any deformity, the arches were preserved, the right heel was tender at the area of the Achilles tendon insertion, and the left arch area was tender.  Tr. 310.  He reported forced dorsiflexion caused Plaintiff discomfort.  Tr. 310.  Dr. Ogisu diagnosed Plaintiff with right foot pain probably caused by Achilles tendinitis and possible plantar fasciitis in the left foot.  Tr. 311.

Dr. Ogisu opined Plaintiff could sit for six hours in an eight-hour workday, could stand or walk for up to three hours in an eight-hour workday, could lift or carry 30 pounds occasionally and 10 pounds frequently, could perform gross and fine manipu-lation occasionally, and had limitations in forceful and sustained gripping or highly repetitive manual activities.  Tr. 311.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."

14   -  OPINION AND ORDER

42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknow-ledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iii). The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must determine the claimant's RFC, which "is an assessment of the sustained, work-related physical and mental activities" that the claimant can still do "on a regular and continuing basis" despite his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec. Ruling (SSR) 96-8p. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20

C.F.R. § 404.1520(a)(4)(v).  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can do.  *Tackett v. Apfel*, 180
F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy
this burden through the testimony of a VE or by reference to the
Medical-Vocational Guidelines set forth in the regulations at
20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner
meets this burden, the claimant is not disabled.  20 C.F.R.
§ 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff engaged in substantial
gainful activity from January 17, 1998, his alleged onset date,
through September 2004.  Tr. 16.  Accordingly, the ALJ found
Plaintiff was not disabled during that period and, therefore, not
entitled to benefits through September 2004.  Thus, the ALJ's
analysis after Step One applies to the period from October 2004
to June 30, 2007, Plaintiff's date last insured.

At Step Two, the ALJ found Plaintiff has the severe
impairments of CTS and right bicep tear.  The ALJ also found
Plaintiff's polysubstance-dependence disorder, substance-induced
mood disorder, and PTSD are not severe impairments.  Tr. 16.

At Step Three, the ALJ found Plaintiff's impairments do not
meet or equal the criteria for any Listed Impairment in 20 C.F.R.

part 404, subpart P, appendix 1.  Tr. 18.  The ALJ then assessed
Plaintiff's RFC and found he is able to perform light-exertion
work; to lift 20 pounds occasionally and 10 pounds frequently; to
sit, stand, or walk for about six hours in an eight-hour workday;
to perform frequent but not constant gross and fine manipulation;
and to perform occasional overhead work with his right arm.
Tr. 18.

Based on Plaintiff's RFC and the testimony of the VE, the
ALJ found at Step Four that Plaintiff can perform his past
relevant work as a "trainer, [auction] sales[person], and case
aide." Tr. 18.  Accordingly, the ALJ found Plaintiff is not
disabled and, therefore, is not entitled to benefits.  Tr. 18-19.
Thus, the ALJ did not proceed to Step Five.


## DISCUSSION

Plaintiff contends the ALJ erred (1) by finding that
Plaintiff was engaged in substantial work activity from
January 17, 1998, through September 2004 at Step One;
(2) by finding that Plaintiff's PTSD was not a severe impairment
and failing to address Plaintiff's foot pain at Step Two;
(3) by failing to include all of Plaintiff's impairments when
determining whether Plaintiff's impairments or combination of
impairments meet or equal a Listing and by improperly assessing
Plaintiff's RFC at Step Three; and (4) by relying on the VE's

19   -  OPINION AND ORDER

testimony, which was vague and inconsistent with the *Dictionary of Occupational Titles* (DOT) at Step Four.

**I.    Step One.**

Plaintiff asserts the ALJ erroneously concluded at Step One that Plaintiff was engaged in substantial gainful activity (SGA) as a self-employed individual from January 17, 1998, his alleged onset date, through September 2004 when he ended his business.

If a claimant is working and that work is SGA, then the claimant is not disabled.  20 C.F.R. § 1420(b).  SGA is "work activity that 'involves doing significant physical or mental activities' on a full- or part-time basis, and is the 'kind of work usually done for pay or profit.'"  *Byington v. Chater*, 76 F.3d 246, 248 (9th Cir. 1996)(citing 20 C.F.R. § 416.972). *See also* 20 C.F.R. § 404.1572.  The Commissioner determines whether a self-employed claimant has engaged in SGA by "applying three tests."  20 C.F.R. § 404.1575(a)(2).  *See also* SSR 83-34. Under the first test, the Commissioner must determine whether a claimant "renders services that are significant to the operation of the business" *and* also "receives a substantial income from the business." *Byington*, 76 F.3d at 249.  *See also* SSR 83-34.  "If it is clearly established that the self-employed person is not engaging in SGA on the basis of significant services and substantial income [under test one], both the second and third SGA tests concerning comparability and worth of work must be

considered."  20 C.F.R. § 404.1575(a)(2).  *See also* SSR 83-34 B.

Here the ALJ noted Plaintiff had consistently fulfilled the responsibilities of his business for 10-50 hours each week from January 17, 1998, until September 2004.  Tr. 15-16, 192-99. Those duties included driving, finding items to sell, taking pictures of the items, and listing them on the auction website. Tr. 15-16, 192-99.  In addition, after selling an item, Plaintiff would pack the item and ship it to the buyer.  Tr. 15-16, 192-99, 304-05, 398, 405-06.  Thus, the ALJ found Plaintiff performed services that were significant to the operation of the business. Tr. 15.  The ALJ also noted, based on Plaintiff's tax returns, that Plaintiff had income from his business as follows:  $2,651 in 1999; $9,691 in 2000; $13,915 in 2001; and $15,803 in 2002. Tr. 15.  In addition, the ALJ stated Plaintiff's earnings records reflect some income until "at least" September 2004.  Tr. 15.  In the end, the ALJ concluded Plaintiff did not receive substantial income from his business.  Tr. 16.  Thus, both elements required under the first test to establish that Plaintiff was engaged in SGA were not satisfied, and the ALJ proceeded to the second test under 20 C.F.R. § 404.1575(a)(2).

Under the second test, the Commissioner must determine whether the evidence "clearly demonstrates" that a claimant's "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable

to that of unimpaired individuals in the same community who are
in the same or similar businesses as their means of livelihood."
SSR 83-34 B(1)(a).  "An important part of the comparison is the
selection of the group of unimpaired persons."  SSR 83-34 B(2).
In addition, "each work factor must be described in detail."  *Id*.
"Development must be specific. . . .  General descriptions are
considered inconclusive evidence for the point-by-point
comparison that is required."  SSR 83-34 B(2).  The "lack of
conclusive evidence as to the comparability of the required
factors will result in a finding that work performed is not
[substantial gainful activity]."  SSR 83-34 B(2).  Under this
test, the ALJ found Plaintiff's work activity as set out above
was not comparable to "that of unimpaired individuals in the same
community" who are in similar businesses because of Plaintiff's
medically determinable impairments of CTS, right bicep tear,
polysubstance dependence, and substance-induced mood disorder.
Tr. 16.  The ALJ, however, did not identify any "conclusive
evidence" that supports his determination that Plaintiff's work
activity was not "comparable to that of other unimpaired
individuals in the same setting."  *See* SSR 83-34 B(1)(a).  In
other words, the ALJ merely recited Plaintiff's impairments
and concluded they prevented Plaintiff from doing work comparable
to someone who did not have those impairments rather than
comparing the work activity of Plaintiff to that of persons in

the same community who do not suffer any impairment and who are working in the same or similar business.  As noted, however, "[g]eneral descriptions are . . . inconclusive evidence for the point-by-point comparison that is required."  SSR 83-34 B(2). Thus, the "comparability of work" test cannot be made on the mere basis of a claimant's impairments or lack thereof.

      If an ALJ finds, based on conclusive evidence, that a claimant's activity is "not comparable to that of unimpaired individuals as indicated" in the second test, the ALJ must proceed to the third test.  SSR 83-34 B(1)(b).  Under the third test, the ALJ must determine whether the claimant's work activity is "clearly worth more than the amount shown for the particular calendar year in the SGA Earnings Guidelines when considered in terms of its value to the business, or when compared to the salary an owner would pay to an employee for such duties in that business setting."  SSR 83-34B(1)(b).  Here the ALJ found Plaintiff's work activities were "clearly worth more than the amount he reports when considered in terms of its value to [his] business" under the "worth of work" test because they were "significant and vital" to his business.  Tr. 16.  The ALJ concluded, therefore, that Plaintiff was engaged in SGA as a self-employed individual under the third test and, accordingly, was not disabled at any time through September 2004.

      Although the ALJ proceeded to the third test to determine

23   -  OPINION AND ORDER

whether Plaintiff engaged in SGA during the relevant period, the
third test, as noted, is only to be applied if the ALJ has found
under the second test, based on conclusive evidence, that
Plaintiff's work activity was not comparable to unimpaired
individuals working the same or similar businesses.  *See*
SSR 83-34 B(1)(b).  Because the Court concludes the ALJ did not
apply the second test properly, the Court need not determine
whether the ALJ's application of and conclusion as to the third
test is legally sufficient.

In summary, the Court concludes on this record that the ALJ
erred at Step One when he concluded Plaintiff was engaged in SGA
as a self-employed individual and, therefore, was not disabled
during the period from January 17, 1998, through September 2004
because the ALJ based his conclusion on a legally insufficient
application of and analysis under the three-part test required by
20 C.F.R. § 404.1575 and SSR 83-34.

## II.  Step Two.[4]

Plaintiff contends the ALJ erred at Step Two when he did
not assess whether Plaintiff's foot pain constituted a severe
impairment and found Plaintiff's PTSD was not a severe
impairment.

In Step Two, the claimant is not disabled if the

---

[4] As noted, the remaining part of the ALJ's analysis applies
to the period from October 2004 through June 30, 2007,
Plaintiff's date last insured.

Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  A
severe impairment "significantly limits" a claimant's "physical
or mental ability to do basic work activities."  20 C.F.R.
§ 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability
to do basic work activities is defined as "the abilities and
aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(a),
(b).  Such abilities and aptitudes include walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, handling,
seeing, hearing, speaking; understanding, carrying out, and
remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id.*

     The Step Two threshold is low.  "[A]n impairment can be
considered as not severe only if it is a slight abnormality which
has such a minimal effect on the individual that it would not be
expected to interfere with the individual's ability to
work . . . .  [T]he severity regulation is to do no more than
allow the Secretary to deny benefits summarily to those
applicants with impairments of a minimal nature which could never
prevent a person from working."  SSR 85-28, at *2 (Nov. 30,
1984)(internal quotations omitted).  The Ninth Circuit described

Step Two as a "*de minimi* screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. *See also Webb v. Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005). "Great care should be exercised in applying the not severe impairment concept." SSR 85-28, at *4.

**A.    Foot pain.**

Plaintiff contends the ALJ erred at Step Two by failing to assess whether Plaintiff's alleged foot pain constituted a severe impairment.

As noted, the ALJ determined at Step Two that Plaintiff had the medically determinable impairments of CTS, right bicep tear, polysubstance-dependence disorder, substance-induced mood disorder, and PTSD. Tr. 16. He found Plaintiff's only severe impairments were CTS and right bicep tear. The ALJ did not address Plaintiff's alleged impairment of foot pain.

The record reflects Plaintiff suffers from and has been treated for various foot problems. Tr. 389, 385, 444, 796-97. At the hearing, Plaintiff testified he has foot problems and uses orthotics to relieve the pain. Tr. 796. He reported the orthotics are not effective if he is on concrete for longer than two hours or if he has to stand all day. Tr. 797. Plaintiff has described daily aching and burning pain in both feet lasting one-to-two hours. Tr. 189, 214. Dr. Ogisu noted Plaintiff's right heel was tender at the area of the Achilles tendon insertion,

26   -  OPINION AND ORDER

that his left arch area also was tender, and that forced dorsiflexion caused Plaintiff discomfort.  Tr. 310.  Dr. Ogisu also diagnosed foot pain probably caused by Achilles tendinitis in the right foot and possible plantar fasciitis in the left foot.  Tr. 311.

Under Step Two, the ALJ was required to address each of Plaintiff's medically determinable impairments, including his foot pain, and to determine whether Plaintiff's impairments were severe.  *See* SSR 85-28, at *4.  *See also* 20 C.F.R. § 404.1512(a) (the ALJ will consider "impairments . . . about which [he] receives evidence.").  Here the ALJ did not do so.

On this record, the Court concludes the ALJ erred when he failed to assess whether Plaintiff's foot pain constituted a severe impairment.

**B.    PTSD.**

Plaintiff contends the ALJ erred when he found Plaintiff's PTSD was not a severe impairment because he improperly rejected the opinions of Plaintiff's treating and examining physicians and improperly gave little weight to the VA's disability determination.

**1.  Physicians' Opinions.**

Plaintiff contends the ALJ erred when he found Plaintiff's PTSD was not severe based on his improper rejection of the opinions of Plaintiff's treating and examining physicians.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Id.*  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so.  *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

The ALJ gave "little weight" to the opinions of Plaintiff's treating VA physicians on the ground that those

opinions were based solely on Plaintiff's subjective complaints and, therefore, lacked objectivity. Tr. 17. The ALJ also gave little weight to Plaintiff's examining physicians.

As noted, the record reflects treating and examining physicians found Plaintiff has chronic and severe PTSD. Tr. 373, 398-99, 400-03, 407, 447, 504. On October 12, 1999, Dr. Mitchell noted an increase in Plaintiff's PTSD symptoms after Plaintiff visited the touring Vietnam War Memorial exhibit and observed Plaintiff was "frantic." Tr. 504. On June 29, 2000, Dr. Michael conducted an examination of Plaintiff and diagnosed depression and chronic, moderately severe PTSD. Tr. 447. He assessed a GAF score of 40 and expressed his opinion that Plaintiff was unemployable. Tr. 447. On December 4, 2002, Dr. Monkarsh observed below-average eye contact and labile affect in Plaintiff and opined Plaintiff suffered from chronic, severe PTSD. Tr. 399. He assigned Plaintiff a GAF score of 45. Tr. 399. On August 26, 2004, Dr. Dicarlo noted an increase in Plaintiff's PTSD symptoms and prescribed Prozac to Plaintiff. Tr. 373.

As noted, Plaintiff's treating physicians consistently assessed Plaintiff's GAF score at 50 or below. In addition, examining and reviewing DDS physicians also assessed Plaintiff with a GAF of 50 or below. For example, on November 25, 2000, Dr. Henry assigned Plaintiff a GAF score of 50; on December 24, 2003, James R. Buskirk, M.D., reviewed and concurred with

29  -  OPINION AND ORDER

Dr. Henry; on October 15, 2003, Dr. Sacks assessed Plaintiff's GAF at 50.  Tr. 271, 277, 306.  As noted, a GAF score of 50 or below is equivalent to a serious impairment in social or occupational functioning.  *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).  Moreover, the record also reflects Plaintiff has consistently reported symptoms of PTSD, including flashbacks, nightmares, exaggerated startle response, hypervigilance, discomfort with crowds, and difficulties with coworkers.  Tr. 156, 165, 188, 207, 785-86, 795-96.

On this record, the Court concludes the ALJ erred when he did not provide legally sufficient reasons supported by substantial evidence in the record for rejecting the opinions of Plaintiff's treating and examining physicians as to Plaintiff's PTSD.

### 2.    VA Disability Determination.

Plaintiff contends the ALJ erred when he disregarded a March 17, 2005, VA disability determination that Plaintiff's PTSD rendered him 70% disabled as of October 21, 2001.

A Social Security disability determination is similar to a VA disability determination in that both are made by federal agencies that provide benefits to those who cannot work due to disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  Although a VA disability determination can translate into

a Social Security disability determination, it is not automatic.
*Id.*

An ALJ ordinarily must give "great weight" to a VA
determination of disability.  An ALJ, however, is not compelled
to reach an identical result.  *Id.  See also* 20 C.F.R. § 404.1504
("A decision by any . . . other governmental agency about whether
you are disabled . . . is based on its rules and is not our
decision . . . .  We must make a . . . determination based on
social security law.  Therefore, a determination made by another
agency . . . is not binding on us.").  If the ALJ gives less than
"great weight" to a VA disability determination, however, he must
provide "persuasive, specific, valid reasons for doing so that
are supported by the record." *McCartey*, 298 F.3d at 1076.

Here, as noted, the VA concluded on March 17, 2005,
that Plaintiff was 70% disabled since October 21, 2001, because
of his PTSD.  Tr. 245.  The VA determined "[a]n evaluation of 70%
is assigned for occupational and social impairment, with
deficiencies in most areas, such as work, school, family
relations, judgment, thinking, or mood."  Tr. 246.  The VA's
conclusion was based on treatment and examination reports
received since the time of his last evaluation.  Tr. 245, 398-99.
Thus, after reviewing the medical evidence, the VA concluded
Plaintiff has "severe PTSD."  Tr. 246.  The VA specifically noted
Plaintiff had been assigned a GAF score of 45 by Dr. Monkarsh on

December 4, 2002, and that "a veteran with this score has serious social and occupational impairment, and is unable to keep a job." Tr. 247, 399.

The ALJ accorded the VA disability determination little weight. Tr. 17. The ALJ stated: "[T]he evaluations of the physicians at the [VA] lack any objectivity" because the evaluations were "nothing more than a reiteration of [Plaintiff's] subjective complaints." Tr. 17. As noted, however, the record reflects the VA reviewed Plaintiff's medical records, including notes of examinations and treatment for PTSD, and, in addition, conducted independent examinations. *See* Tr. 373, 398-99, 400-03, 404-07, 447, 504.

The ALJ also placed great weight on the fact that Plaintiff was working as of the VA disability onset date of October 21, 2001. Tr. 17. The ALJ stated: "It appears the [VA] does not take into consideration whether or not an individual is actually working." Tr. 17. Although Plaintiff was working as of the VA disability onset date, the VA upgraded Plaintiff's disability to 70% on March 17, 2005, and found Plaintiff to be disabled to such an extent that he would have been "unable to secure or follow a substantially gainful occupation" since October 21, 2001. Tr. 247. The record reflects Plaintiff ended his business in September 2004. Tr. 16, 792. Thus, even if the ALJ had properly determined Plaintiff had engaged in SGA from

32   -   OPINION AND ORDER

January 17, 1998, to September 2004 and, therefore, was not disabled during this period pursuant to Social Security regulations and rules, the ALJ still was required to give "great weight" to the VA's disability determination as to the period beginning October 2004.  In addition, the Court has found the ALJ improperly rejected the opinions of Plaintiff's treating and examining physicians, which generally formed the basis of the VA's disability determination.

On this record, therefore, the Court concludes the ALJ erred when he did not provide legally sufficient reasons supported by substantial evidence in the record for giving little weight to the VA disability determination based on Plaintiff's PTSD.

In summary, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons supported by substantial evidence in the record for rejecting the opinions of Plaintiff's treating and examining physicians; failing to address Plaintiff's foot pain; finding Plaintiff's PTSD was not a severe impairment; and giving little weight to the VA's disability determination.

**III. Step Three**.

Plaintiff contends the ALJ erred at Step Three by failing to include all of Plaintiffs' impairments when determining whether Plaintiff's impairments or combination of impairments meet or equal a Listing and when assessing Plaintiff's RFC.

The Court has found the ALJ erred when he concluded Plaintiff's PTSD was not a severe impairment and failed to address Plaintiff's medically determinable impairment of foot pain.  As a result, the ALJ did not include either of these impairments in his Step Three analysis or in his assessment of Plaintiff's RFC.

On this record, therefore, the Court concludes the ALJ erred when he failed to provide legally sufficient reasons for not including the severe impairment of PTSD and for failing to address the medically determinable impairment of foot pain when he determined whether Plaintiff's impairments or combination of impairments meet or equal a Listing at Step Three and when he assessed Plaintiff's RFC.

**IV.  Step Four.**

Plaintiff also contends the ALJ erred at Step Four when he found Plaintiff could perform his past relevant work because the ALJ based his conclusion on vague VE testimony that was inconsistent with the DOT.

The Court need not address this issue because the Court has already determined the ALJ's assessment of Plaintiff's RFC was incomplete, and, therefore, the hypothetical based on that RFC was inadequate.

**REMAND**

34   -  OPINION AND ORDER

The decision whether to remand this case for further proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178. The decision generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the ALJ erred at Step One when he, among other things, improperly analyzed Plaintiff's SGA as a self-employed person; at Step Two improperly rejected the opinions of Plaintiff's treating and examining physicians, found Plaintiff's PTSD is not a severe impairment, failed to address Plaintiff's medically determinable

35   -   OPINION AND ORDER

impairment of foot pain, and gave little weight to the VA's disability determination; at Step Three, as a result of his errors, improperly evaluated whether Plaintiff's impairments or combination of impairments meet or equal a Listing and improperly assessed Plaintiff's RFC; and at Step Four posed an inadequate hypothetical to the VE based on an incomplete RFC assessment.

On this record, therefore, the Court finds there are "outstanding issues that must be resolved before a determination of disability can be made."  Accordingly, the Court concludes that a remand of this matter is necessary for further administrative proceedings consistent with this Opinion and Order.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

With respect to future proceedings in this matter after remand, § 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of

the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs.  *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008).  *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006).  To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such application within 60 days from the receipt of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 12th day of November, 2008.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


37  -  OPINION AND ORDER